No. 8783.

CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* EYSTER.

Decided January 7, 1918.

Action to recover damages for killing of livestock by railway company's train. Judgment for plaintiff.
*Affirmed.*

1. RAILROADS—*Stock Killing Statute Construed.*   Under chapter 135, S. L. 1911, relative to killing of stock by railroads, the owner of stock killed is bound by the procedure therein established only when the railroad company complies with its provisions, and if the company fails in this respect, the owner may bring an action under secs. 1, 2, 3 and 4 of the act to recover the actual value of the animals killed.

2.      *Fencing Right of Way.*  Failure of a railroad company to maintain a fence as required by the act, is negligence *per se*, and if such negligence is the cause of the accidental killing of stock, the owner may recover.

*Error to the District Court of El Paso County, Hon. J. W. Sheafor, Judge.*

Mr. WILLIAM V. HODGES, Mr. D. EDGAR WILSON, Mr. HAROLD H. HEALY, Mr. FRANKLIN E. BROOKS, Mr. GEORGE W. BIERBAUER, for plaintiff in error.

No appearance for defendant in error.

*En banc.*

MR. JUSTICE GARRIGUES delivered the opinion of the court.

In this action, brought to recover the value of livestock killed on defendant's railroad by a train, plaintiff alleges that along the railroad right of way the fence was broken down, and negligently permitted by the company to remain so defective as to allow animals to stray upon the railroad track.   The answer denies the animals strayed upon the track and were killed by reason of defendant's negligence in failing to maintain a good and sufficient fence, or on account of its defective condition; alleged the railroad right of way where the animals were killed was inclosed with good and sufficient fences, gates, and cattle guards capable of keeping animals off the railroad, and that the fence was kept in good and proper condition of repair; and denies that its negligence was the cause of the accident.   It then alleges that about three weeks prior to the accident there was an abnormal fall of snow, which drifted and so covered the fence that the animals walked on the drifted snow over

the top of the fence onto the right of way and were killed; that plaintiff knew the condition regarding the snowdrifts, and failed to exercise ordinary care in keeping the animals inclosed, and negligently permitted them to run at large adjoining the right of way during the prevalence of such conditions. It then pleads its compliance, and plaintiff's noncompliance with what is usually termed the stock-killing statute. S. L. 1911, p. 400.

The animals were in an inclosed pasture or range adjoining the railroad, which was also inclosed. At a farm crossing the company had constructed and was maintaining a gate, and it was here the animals got onto the railroad. There was evidence that the gate had been partly destroyed by fire, which left it in a defective condition, with the top board down or entirely off, for a long time prior to the snowstorm, and, though often repaired, that the gate was not maintained at the proper height; that the snow had drifted against the gate and partly covered it; and that the animals walked on the snowdrift over the top of the gate onto the track and were killed by a train. The jury returned a verdict for plaintiff.

Garrigues, J., after stating the facts as above.

In 1911 the Legislature passed a comprehensive stock-killing statute. S. L. 1911, p. 400. This statute requires the railroad company to notify the nearest state livestock inspector and the section foreman when such an accident occurs on its railroad, and they together must inspect the animals. The inspector must estimate their value if killed, and the damages if the animals are injured, ascertain the owner's name, and report his findings to the secretary of the state board of stock inspection commissioners. After receiving such report, the secretary must send a copy of it to the owner, also to the railway company, and request it to pay the estimated value to the board for the use of the owner. The owner, after receiving from the secretary such copy of the inspector's report, may, if satisfied, file proof of ownership with the secretary and accept the estimated value, which, if he does, is a final settlement. If dissatis-

fied, however, with. the estimated value, but willing to arbitrate the damages, he may file proof of ownership and the amount of damages he claims with the board, and its award shall be final and binding upon each.    But, after being so notified, he may decline to do either; that is, to accept the estimated value or to file his claim with the board, in which event he is required to file a demand with the station agent, and if he fails to do that within six months after the accident, when notified, his claim against the railway company is forever barred.    If he pursues the latter course and files his demand with the station agent, then the company must within 30 days pay the full demand, if it does not, the owner may sue and recover the full damages, provided he brings suit within six months from the date of filing such demand with the station agent.

The suit in this case is not based upon the inspector's estimated value which the company failed to pay, nor upon the award of the board, nor upon the company's failure to pay within 30 days the demand filed with the station agent. The company did not comply with the statute and none of these things were done.    The action is based upon sections 1, 2, 3 and 4 of the act to recover the actual value of the animals.    It is only in the event the owner, after being notified, declined to accept the estimated value, or to file a claim with the board that he was required to file a demand with the station agent.    He was not notified, and given an opportunity to file proof of ownership with the secretary and accept the estimated value or to arbitrate.    The company neglected to notify the inspector, and there was no inspection so far as the record shows.    The owner was required to file his demand with the station agent as required by section 10 of the act, only in the event he declined, after being notified, to accept the estimated value or to arbitrate. He had no opportunity to do either.    Before the six months' statute could bar his right to recover, he first had to be notified and given an opportunity to accept or arbitrate. The railroad company's compliance with the act is a condition precedent to the requirement that the owner file proof

of ownership as required by section 8, or a demand with the station agent as required by section 10. It is only in the event that the owner, after being notified, declined to accept the provisions of section 8, that he is affected by the provisions of section 10. Therefore the company's contention that the owner failed to file proof of ownership, and failed to file a demand with the station agent, and that the six months' statute of limitations bars the action, is not availing to it as a defense in this case.

Sections 1, 2, 3 and 4 of the act provide in substance that if the railway company fails to inclose its railroad with a good fence, gates, and cattle guards amply sufficient to prevent animals from getting on the railroad, it shall be absolutely liable to the owner for all live stock killed or injured by trains on the railroad; if it duly builds and keeps in sufficient repair such fences, gates, and cattle guards, it will not be liable, and it may plead and prove compliance as a defense. The statute makes the mere happening of such an accident *prima facie* evidence of negligence and provides that the company must pay full value for all damages, unless it show affirmatively on the trial that the accident was not caused by its negligence. This suit is based upon the alleged negligence of the company for failure to maintain a fence amply sufficient to prevent animals from getting upon the railroad. It is not to recover a penalty, but is to recover compensation for actual damages. It is a remedial right given by statute to recover the actual value of animals killed through the company's negligence in failing to comply with the statute. Failure to maintain a fence as required by the act is negligence *per se,* and, if that was the cause of the accident, plaintiff could recover.

There was evidence on the trial that the fence at the farm crossing where the animals got upon the track was in a defective condition some time prior to the snowstorm. The jury could have found under the evidence that, if the gate at the farm crossing had been kept and maintained in the condition required by the act, the animals would not have gone upon the railroad. If this is true, the failure to

properly maintain the gate was the proximate cause of the accident.  We have read the entire record, including the instructions given and refused, and carefully considered the statute.  We think the jury was properly instructed; we have found no errors of sufficient importance to reverse the judgment, and it is therefore affirmed.